## MATHEW KELLER v. A. B. CHAPMAN.

ELECTION CONTEST.—Proceedings instituted to contest the election of county officers, are special and summary in their character.

IDEM—CONTESTANT'S DUTY.—The contestant will not be permitted to take judgment by default, but must prove the allegations of his statement.

RETURNS NOT TO BE REJECTED FOR IRREGULARITY NOT RESULTING IN INJURY.—Election returns should not be rejected for any irregularity in the appointment of the officers of election, where it does not appear that any injurious results accrued therefrom, either by the reception of illegal votes or the rejection of legal votes, or that either of the candidates lost or gained votes thereby.

CONTINUANCES IN ELECTION CONTEST CASES.—Where, in an election contest case, on trial in the County Court, a continuance was granted for seven days against the objections of respondent, and without affidavit showing cause : *held*, that it was unauthorized, and operated as a discontinuance of the proceeding.

APPEAL from the County Court of Los Angeles County.

This was a proceeding, under the statute, by the contestant, as a qualified elector of Los Angeles County, to contest and set aside the election of defendant, at the general election held in 1867, to the office of District Attorney of said county.

Among the grounds of contest set forth in contestant's statement are the following, to wit:

"That at said election, holden at the Half-Way House Precinct of said county, the same was not holden by the Clerk appointed by the Board of Supervisors, nor by any other Clerk appointed according to law.

"That at said election, holden at the Precinct of San Juan, of said county, the same was not holden by the officer or Clerk appointed by the Supervisors of said county, but by a substitute named by said Clerk, and without authority; that the Clerk appointed by said Supervisors was Paul Prior, who appeared on the day of the election and substituted Juan Abila in his place, contrary to law, and who was not sworn according to law, and who held said election and certified the returns thereof. That no Board of Registration was appointed, constituted, or qualified according to law for said precinct prior to said election. That the said votes given at said precinct were illegal, and if not counted for said A. B. Chapman, would defeat him for said office by a plurality of eleven votes.

"Petitioner alleges that said Chapman was declared elected by the Board of Canvassers of said county by a plurality of eight votes. That V. E. Howard had the next highest number of votes for the office of District Attorney of said county, and would be duly elected if said illegal votes are rejected. That said Chapman was declared elected by means of and in consequence of the irregularity and irregularities above set forth, and of the illegal votes given at said election precincts," etc.

After the trial had progressed for two days, the Court, on contestant's motion, and against the defendant's objections, adjourned further proceedings therein for seven days.

Among the facts and conclusions of law found by the Court are the following, to wit:

"1st. That at the precinct called the Half-Way House, George Carson acted as one of the Judges of the general election, in September last, without having been named by the Board of Supervisors or elected, as provided for by statute.

"2d. That at the Precinct of San Juan, at the general election aforesaid, the election was held by Juan Abila, not appointed by the Board of Supervisors as an officer at said election, and without having been elected, as provided for by statute.

"3d. That William McLaughlin, who was appointed by the Board of Supervisors as one of the officers of said election, was an alien. * * *

"And the Court finds, as a conclusion of law, that at the Half-Way House the election was not held by the officers appointed by the Board of Supervisors, or elected, as provided for by statute, and there was no legal election in said precinct.

"So also in the Precinct of San Juan, the election was not held by the officers appointed by the Board of Supervisors, or elected, as provided for by statute, nor could some of the persons appointed by the Board of Supervisors act, one being an alien. * * *

"Therefore, it is ordered, adjudged, and decreed that the election at the precinct of the Half-Way House is null and void. Also, that the election in the Precinct of San Juan is null and void.

"That the certificate of election of A. B. Chapman, as District Attorney for the County of Los Angeles, is null and void, and that the next person receiving the greatest number of votes for the office of District Attorney, as aforesaid, was V. E. Howard, who is hereby declared duly elected and entitled to a certificate of election as District Attorney," etc.

Judgment was rendered accordingly.

At the trial no proof was made by contestant of any other

votes cast or canvassed for Howard or defendant for said office, except at said precinct. Defendant Chapman appealed.

The other facts are stated in the opinion of the Court.

*Thom & Smith,* and *A. Glassell,* for Appellant.

The County Court erred in declaring the elections held at the Precincts of Half-Way House and San Juan null and void.

It is not pretended that any fraud was practised, that any irregularity was committed, that any illegal voter voted, or that the result of the election was in anywise influenced or affected at those precincts by the *de facto* officers of election.

Nor is it shown that the officers who officiated failed to qualify, or to take the constitutional oath of office; or that any of them omitted or committed any act tending to impair the integrity, regularity or proper result of the election. (*Whipley* v. *McCune,* 12 Cal. 361; *People* v. *Cook,* 14 Barb. 316–318.) Admitting that all the provisions of the Registry Act were not strictly complied with by the Boards of Election, is that to cut off the voters of those precincts from voting? If so, it would always be in the power of a few unscrupulous individuals to disfranchise a whole community. But the Courts do not countenance any such harsh and absurd construction of the statute. When the *voters* are in no fault, their fair and honest expression at the ballot box will not be set aside on account of a harmless and immaterial omission of one or more of their officers. (Hitt. Dig., Art. 2,471; *Sprague* v. *Norway,* 32 Cal. 175; 12 Cal. 361; *People* v. *Cook,* 14 Barb. 200, 292, 294, 326.)

The County Court erred in finding that V. E. Howard was the next person to appellant receiving the greatest number of votes for the office of District Attorney. If it is to be regarded as a finding of fact, then there is no evidence to support it. If it be regarded as a conclusion of law, then it has no premises, either in the findings or the evidence. The County Court lost jurisdiction of this cause by adjourning

the trial for the space of one week, after the trial commenced, and its findings and judgment herein are *coram non judice.* (Hitt. Dig., Art. 2,481; *Dorsey* v. *Barry*, 24 Cal. 449–457; *Casgrove* v. *Howland*, 24 Cal. 457.)

*V. E. Howard,* for Respondent.

While minor irregularities are to be disregarded, the validity of an election depends on its being held at the proper time and place, and by the officers required by law. (*Satterlee* v. *San Francisco*, 23 Cal. 230; *Bourland* v. *Hildreth*, 26 Cal. 178.) There must be a substantial compliance with the law. (*Knowles* v. *Yates*, 31 Cal. 92; see the *Petaluma Case, ante,* as to registration.) The election at San Juan was not held by the Clerk of the Election appointed by the Board of Supervisors, but by a person by the name of Abila, who was not Clerk, either *de facto* or *de jure*, but a mere intruder, and his acts were void. (*The People* v. *White*, 24 Wend. 526; *Wilcox* v. *Smith*, 5 Wend. 234; *The People* v. *Cook*, 4 Selden, 99.) There is the same objection to the officer at the Half-Way House.

Suffrage is not a natural right. It is a creature of the law, instituted for the benefit of society, and to be exercised in the manner which the law prescribes. (Story on the Const., Sec. 580; 30 Conn. 591; *Chase* v. *Miller*, 41 Penn. St. R. 420.) The power of the Legislature to regulate the mode and manner of holding elections, when not restrained by the Constitution, has been recognized by repeated decisions of this Court. (*Westbrook* v. *Rosborough*, 14 Cal. 186.) These statutes are mandatory. (*People* v. *Weller*, 11 Cal. 49.) Majorities go for nothing at an irregular election, and are not regarded as majorities. (*Commonwealth* v. *Ross*, 35 Penn. St. 263.)

By the Court, Rhodes, J.:

Proceedings instituted to contest the election of county officers are special and summary in their character. (*Saunders* v. *Haynes*, 13 Cal. 150; *Whitney* v. *Board of Delegates*, 14 Cal. 503; *Searcy* v. *Grow*, 15 Cal. 117; *Dorsey* v. *Barry*, 24 Cal. 449; *Casgrove* v. *Howland*, 24 Cal. 457.)

The contestant is not permitted to take judgment by default. (*Searcy* v. *Grow; Dorsey* v. *Barry, supra*.) He must, therefore, prove the allegations of his statement. He failed to prove that Howard received any votes except at the precincts the returns of which were rejected by the Court, and certain others which were in controversy, at which the respondent received the majority of the votes. This error is fatal.

The rejection by the County Judge of the returns of the election held at the Half-Way House Precinct, and at San Juan Precinct, on account of irregularity in the appointment of certain of the officers of the election, cannot be sustained without overturning the doctrine of *Sprague* v. *Norway*, 31 Cal. 173, as it does not appear that any injurious results accrued therefrom, either by the reception of illegal votes or the rejection of legal votes, or that either of the candidates lost or gained votes thereby.

In *Dorsey* v. *Barry* we commented upon section sixty-two of the Election Act, and held that the provision that the Court " may adjourn from day to day until such trial is ended, and may also continue such trial before its commencement to any time not exceeding twenty days, for good cause shown," etc., precluded the Court from ordering any other continuances than such as were therein provided for. The summary nature of the proceedings is inconsistent with the exercise of the general discretionary power of granting continuances possessed by Courts in civil actions. The expression of the particular mode and time of continuance is exclusive of all non-enumerated modes and times. The continuance from the sixth of the month, when the cause

was on trial, to the thirteenth of the same month, against the objections of the respondent and without an affidavit showing cause, was unauthorized, and operates as a discontinuance of the proceeding.

Judgment reversed.