IN RE LITER'S ESTATE.

[Submitted April 26, 1897. Decided May 3, 1897.]

*Administration—Proof of Death—Affidavit—Presumption of Death.*

ADMINISTRATION—*Proof of Death.*—In application for letters of administration where there is no contest, affidavits of non-resident witnesses, taken before a notary public, may be used to prove death, although no commission was issued and no notice was given that the testimony of such witnesses would be taken.

SAME.—The district judge, if he is not satisfied with the proof thus offered, has the power to order further testimony.

SAME—*Presumption of Death.*—The law presumes the death of a person who is shown to have departed from her home more than 14 years prior to application for letters of administration, and has never returned, and who has never been heard of by her mother and sisters for more than 14 years, although they made diligent search in the attempt to find her.

*Appeal from District Court, Ravalli County. F. H. Woody, Judge.*

PETITION by the public administrator of Ravalli county, Mont., for letters of administration on the estate of Eva B. Liter. The petition was denied, and petitioner appeals. Reversed.

Statement of the case by the justice delivering the opinion.

Upon the 23d day of April, 1895, the public administrator of Ravalli county made application in the district court for letters of administration upon the estate of Eva B. Liter. The petition set forth that the said Eva B. Liter, in or about the month of April, 1882, departed from her home in said county and went to Ogden, in Utah territory, at which last-mentioned place she was last heard of in 1883, and that after diligent search and inquiry on the part of her near relatives, no trace of her had ever been discovered; that the said Eva B. Liter left an estate in said county, consisting of real and personal property, not exceeding in value the sum of $2,000; that the said estate was uncared for and in danger of being lost in consequence of having been sold for taxes in 1894; and that the next of kin of said Eva B. Liter were Martha J. Cash, her mother, and her two sisters, Sallie E. Buchanan and Rebecca R. Brown, all residing in New London, in the state of Missouri. The petition further alleged that said Eva B. Liter had two children, aged 10 and 3 years, respectively, who accompanied their mother and disappeared with her. The petition was filed apparently at the request of the nonresident heirs aforesaid, and notice of the petition was duly given, as required by the statute.

On July 13, 1896, the application for letters, with proofs, was duly submitted to the judge of the district court. Certain witnesses were examined orally, who testified that they knew Eva B. Liter when she resided in their neighborhood; that she had rented her ranch for the period of three years for $100 per year, and sold off her personal property, and left there, accompanied by her two little daughters and a man by the name of Charles Mercer, in May, 1881; and that she had not

been heard from since that time, so far as the witnesses knew, by any one, except through one letter, said to have been received by one of her neighbors, and postmarked "Ogden, Utah," several months after her departure, which letter related to the collection of the first year's rental of her ranch.

There were also submitted to the court depositions of the mother and two sisters of said Eva B. Liter, taken before a notary public in Missouri. In these depositions the mother, after stating her age and place of residence, testified that she believed her daughter Eva B. Liter to be dead. Her reasons for this belief were as follows: "Because we cannot hear anything from her, or ascertain anything about her. For some time prior to 1881, she and her husband, N. B. Liter, lived at or near the town of Victor, in the state of Montana, and she came to Missouri to visit relatives here. In the month of May, 1881, she started back to Victor, Montana, and was met at the town of Deer Lodge, Montana, by her husband, and they started by overland route to Victor, and her husband died on the way before reaching Victor. My daughter Eva Liter stayed near Victor on her farm for about one year after the death of her husband. In the month of May, 1882, she started for Missouri, intending to come back to her relatives and reside permanently. When she left Victor she had with her her two children, Gertrude and Martha Liter, these being her only children, aged ten and three years, respectively, and an old lady whose name I do not now remember, and a man by the name of Charles Mercer, who was a farm hand who had been working on the farm for her for some time past, and she had gotten him to drive the wagon to Ogden City for her, so that she and the children might take the train there for Missouri. It was a five days' journey, and the old lady stopped at her destination, the place where she was going, one day before the end of the journey; that is, one day before they should have reached Ogden. This old lady is now dead. It is understood and believed, from the best information we can get, that Mrs. Liter had money with her on this trip, and it is believed that she and the children were murdered. At least,

nothing has ever been heard since by any one, although great and diligent search has been made. We have made diligent search and inquiry for her and the children for years, but have heard nothing whatever of or from her since she left Victor for Ogden City."

Then follow the details of the inquiry and search made. The depositions of the sisters corroborated that of the mother. The mother also testified that she believed her daughter Eva B. Liter had died intestate. The commission to take the depositions was issued by the clerk of the district court on September 30, 1895.

The court took the matter under advisement, and on December 15, 1896, denied the application for letters of administration. The court certifies that the depositions referred to were not considered, for the reason that they did not comply with the requirements of section 3350, Code of Civil Procedure of Montana, in that no notice was ever served or filed with the clerk of the court, signed by said petitioner, or by any one in his behalf; that no list of interrogatories was ever filed with said clerk, and no order was ever made or signed by the court, or judge thereof, directing the issuing of the commission under which said depositions were claimed to have been taken.

This appeal is from the order denying the application for letters of administration.

*H. D. Moore*, for Appellant.

Buck, J.—Under the probate statutes of the Montana Code of Civil Procedure of 1895, an application for letters of administration may assume the form of an action, to which there are parties plaintiff and defendant. This would probably be the case when two applications for letters on the same estate, adverse to each other, are heard together. (See sections 2443, 2444, 2923, Code Civ. Proc.) Under the statutes in force prior to July 1, 1895, where an application for letters of administration was contested and issues of fact arose, the proceeding might also have been regarded as one in the form of

an action, to which there were opposing parties. Under the Code of Civil Procedure (Comp. St. 1887), however, as well as under the present Code of 1895, when, after due notice given as required by statute, no one contests an application for letters of administration, the proceeding cannot be regarded as an action, with parties opposed to each other in interest. It is true, under section 2447, Code of 1895, proof must be made of intestacy and death in the same manner as the statute prior to the time it took effect required. The object of such an inquiry, however, was and is only to ascertain what condition of facts exists. Questions must be answered, but no actual issues of fact are involved in the hearing of proof in respect to the questions. The district court or judge acts simply in behalf of all persons interested in the administration of the estate, and does so both in a somewhat ministerial as well as judicial capacity. Under section 2446, New Code (section 67, div. 2, Comp. St. 1887), the judge or court must grant letters to any qualified applicant in the absence of a contest, even if there are persons possessing better rights to the letters.

The main proof submitted to the district judge in this case was contained in the rejected depositions. We must concede that these depositions were defective under the requirements of sections 3350, 3351, Code of Civil Procedure of 1895, if they apply. These sections are as follows:

Section 3350: "The deposition of a witness out of this state may be taken upon the commission issued from the court, under the seal of the court, upon an order of the court, or a judge thereof, on the application of either party, upon five days' previous notice to the other. If issued to any place within the United States, it may be directed to any person agreed upon by the parties, or if they do not agree, to any judge or justice of the peace, or commissioner, selected by the court or judge issuing it. If issued to any country out of the United States, it may be directed to a minister, ambassador, consul, vice consul, or consular agent of the United States in such country, or to any person agreed upon by the parties."

Section 3351: "Such proper interrogatories, direct and

cross, as the respective parties may prepare to be settled, if the parties disagree as to their form, by the judge or officer granting the order for the commission, at a day fixed in the order, may be annexed to the commission; or, when the parties· agree to that mode, the examination may be without written interrogatories.''

Section 3320, Code of Civil Procedure of 1895, says: ''The testimony of a witness is taken in three ways: (1) By affidavit; (2) by deposition; (3) by oral examination.''

Section 3321 defines an affidavit as follows: ''An affidavit is a written declaration under oath, made without notice to the adverse party.''

Section 3322 defines a deposition thus: ''A deposition is a written declaration under oath, made upon notice to the adverse party for the purpose of enabling him to attend and cross-examine.''

Section 3330 is as follows: ''An affidavit may be used to verify a pleading or a paper in a special proceeding, to prove the service of a summons, notice or other paper in an action or special proceeding, to obtain a provisional remedy, the examination of a witness, or a stay of proceedings, or upon a motion, and in any other cases expressly permitted by some other provision of this Code.''

Section 3334 reads thus: ''An affidavit taken in another state of the United States, to be used in this state, may be taken before a commissioner appointed by the governor of this state to take affidavits and depositions in such other state, or before any notary public in another state, or before any judge or clerk of a court of record having a seal.''

Section 3340 is as follows: ''In all cases other than those mentioned in section 3330, where a written declaration under oath is used, it must be a deposition as prescribed by this Code.''

Section 3341 is as follows: ''The testimony of a witness out of the state may be taken by deposition in an action at any time after the service of the summons or the appearance of the defendant, and in a special proceeding at any time after a question of fact has· arisen therein.''

In a proceeding where there are no parties, in the sense of adverse parties plaintiff and defendant, what object would be subserved by giving the notice required by section 3350, *supra?* Clearly, none. The distinction between an affidavit and a deposition is defined in section 3322, *supra.* Each is a declaration under oath, and the distinction recognized by the court between the two is simply for the purpose of preserving the right of cross-examination. Nor, from an abstract standpoint, would there be any necessity for attaching formal interrogatories to the commission to take the deposition as required by section 3351, *supra.* Whether these sections 3350 and 3351 were intended to prescribe a method of obtaining testimony to be used in a probate proceeding of the character of this one we have under consideration, we rather doubt. If they do not, however, section 3341, *supra,* is broad enough in scope to cover the taking of testimony to be used in probate matters to which there are no adverse parties. Even if no specific mode has been prescribed by law for taking a deposition in such cases, section 205, Code of Civil Procedure, supplies the omission. It is as follows:

"When jurisdiction is, by the constitution or this Code, or any other statute, conferred on a court or judicial officer, all the means necessary to carry into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

It is true that as a general rule of law upon the trial of an issue of fact, an *ex parte* affidavit cannot be admitted in evidence for any other purpose than the contradiction of the affiant. (See 1 Enc. Pl. & Prac., p. 333). But in this proceeding, as has been stated, there was no actual issue of fact, and under sections 205, 3340, and 3341, despite any literal interpretation of sections 3330 and 3340 which might seem to forbid it, we think it would have been proper for the lower court to have considered these sworn declarations of the relatives of Eva B. Liter, whether designated as "affidavits" or

"depositions," in the absence of anything impugning them, for the purpose of determining whether letters of administration should have been issued to the public administrator. We think this is in accordance with the spirit of the Code.

As to the objection that the judge had not authorized the issuance of the commission for the taking of these depositions, we think that also amounts to little. It is true, under circumstances which might arise, the judge might desire to have special questions put to a nonresident witness whose affidavit or deposition was to be used before him; but, in such a case, if upon the examination of the affidavit or deposition presented to him he is still in doubt, he would have full power to order and have prepared more complete affidavits or depositions.

In this appeal the judge himself states the reasons in full why he did not consider these sworn declarations of the mother and sister of Eva B. Liter, and hence we deem it unnecessary to go more fully into the matter as to any other objections which might be made.

Was the evidence before the trial judge sufficient, then, to justify the granting of the letters of administration upon the estate of Eva B. Liter to the public administrator?

Code of Civil Procedure, § 3266, subdivision 26, is as follows:

"All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: * * * (26) That a person not heard from in seven years is dead."

The petition of the public administrator was filed on the 23d day of April, 1895, before the Code of 1895 took effect; but the rule embodied in section 3266, subdivision 26, *supra*, simply embodies what was the law of the state in relation to a presumption of death from absence prior to July 1, 1895, when the Code of 1895 went into effect. The law is well stated in 1 Am. & Eng. Enc. Law, p. 37, as follows:

"The rule of law is that, upon a person leaving his usual home and place of residence for temporary purposes, and not

being heard of or known to be living for the term of seven years, the presumption is that he is not alive. It must appear that he has not been heard of by those persons who would naturally have heard from him during the time had he been alive. The rule, however, does not confine the intelligence to any particular class of persons. It may be to persons in or out of the family. The mere failure to hear from an absent person for seven years who was known to have had a fixed place of residence abroad would not be sufficient to raise the presumption of his death, unless due inquiry had been made at such place without getting tidings of him."

The evidence before the trial court showed that Eva B. Liter, with her two children, departed from her home in Ravalli county a long time ago; that she never returned; and that neither she nor her children had been heard of for a period of some 14 years by her near relatives,—her mother and two sisters,—who had made inquiries about her, and had sought a long time to obtain intelligence of her whereabouts. From the evidence it does not appear that she had ever taken up her residence in another place. Her mother and sisters testified that she started for Missouri to reside there permanently. Her neighbors testified that she had rented, not that she had sold, her ranch. On this statement of facts, unless the court had reason to believe that the statement before it were untrue, a clear presumption of death was raised by the evidence, and, in the absence of anything showing the contrary, letters of administration should have been granted to the public administrator.

It is true the proof is very slight as to the intestacy of Eva B. Liter, but if the court is in doubt about that, it can hear further evidence on the subject. If it is in doubt, for any valid reason, of the death of Eva B. Liter, it can also hear further proof. But if there is no reason to doubt the truth of the evidence already before it, it is the duty of the lower court to grant the letters of administration applied for.

Under section 3366, *supra*, the presumption of death is a disputable one, and may be controverted by other evidence;

but section 3264, Code of Civil Procedure of 1895, is as follows:

"A presumption (unless declared by law to be conclusive) may be controverted by other evidence, direct or indirect; but unless so controverted, the jury are bound to find according to the presumption."

If, under said section 3264, a jury would be bound to find death, why should not a district judge, inquiring into a condition of facts, be also governed as a jury would have been if there had been an actual contest?

The judgment or order denying the application for letters of administration is reversed, and the cause is remanded, with directions to the lower court to act in accordance with the views herein expressed.

*Reversed and Remanded.*

PEMBERTON, C. J., and HUNT, J., concur.

